### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

JARROD ROBINSON,

        **Plaintiff,**

v.

ANGELA CRAIN AND
ANTHONY WILLS,

        **Defendants.**

**Case No. 24-CV-01138-SPM**

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Summary Judgment filed by Defendants Angela Crain and Anthony Wills. (Doc. 68). Having been fully informed of the issues presented, Defendants' Motion for Summary Judgment is **GRANTED**.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Robinson, an inmate currently incarcerated at Pontiac Correctional Center in Illinois, filed the instant case on April 18, 2024. (*See* Doc. 1). This case involves injuries to Robinson's right arm which were sustained in an alleged assault at Shawnee Correctional Center on January 17, 2024. (Doc. 1, p. 6). Robinson that that this assault caused pain in his right hand and arm, including continuing numbness in his hand and fingers. (*Id.*). He alleges that these injuries were not treated after he was transferred to Menard Correctional Center on January 18, 2024. (Doc. 68, ¶¶ 1–33 (citing *id.*, Ex. B)).

This Court screened Robinson's Complaint and allowed him to proceed on a single 42 U.S.C. § 1983 Eighth Amendment deliberate indifference claim against

Defendants Warden Anthony Wills and Health Care Unit Administrator Angela Crain. (*See* Doc. 15).[1] Robinson alleges that Defendants Wills and Crain failed to act to ensure that he received medical care following an assault that occurred at Shawnee Correctional Center on January 17, 2024, writing that "[t]he Court finds it concerning . . . that months have passed since his transfer to Menard, and Plaintiff has not been seen by a medical provider." (*Id.*, p. 6; *see id.*, p. 2). This Court denied Robinson's Motion for a Temporary Restraining Order (*see* Docs. 13, 15) and his Motion for a Preliminary Injunction (*see* Docs. 13, 45).

Defendants Crain and Wills filed the instant Motion for Summary Judgment on February 9, 2026. (Doc. 68). Plaintiff Robinson did not file a response in opposition, including after this Court warned him that failure to file a response would result in consideration of the Defendants' Motion without a response from him. (*See* Doc. 69).

<strong>APPLICABLE LAW AND LEGAL STANDARDS</strong>

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Stated another way, the nonmoving party must offer more than

---

[1] His other surviving claims against Defendants at Shawnee Correctional Center were severed into a separate case. (*See* Doc. 15, pp. 6–7); *see Robinson v. Merriman*, No. 24-cv-01681-RJD (S.D. Ill.).

"[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) *(*citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640–41 (7th Cir. 2008) (quoting *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008)). The nonmovant cannot simply rely on its pleadings; rather, the nonmovant must present admissible evidence that sufficiently shows the existence of each element of its case on which it will bear the burden of proof at trial. *Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (citing *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995); *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.,* 998 F.2d 391, 394 (7th Cir. 1993), *cert. denied*, 510 U.S. 1111 (1994); *Celotex*, 477 U.S. at 323–24).

## ANALYSIS

## I.    Eighth Amendment Deliberate Indifference

The Eighth Amendment prohibits cruel and unusual punishment and deliberate indifference to the "serious medical needs of a prisoner [which] constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (citation

omitted). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Claims for deliberate indifference have an objective and a subjective component. *Estelle v. Gamble*, 429 U.S. 97 (1976). Robinson must establish that he suffered from an objectively and sufficiently serious medical condition. *Cesal v. Moats,* 851 F.3d 714, 721 (7th Cir. 2017). Robinson must also show that Defendants actually knew of, but disregarded, a substantial risk to the inmate's health. *Cesal,* 851 F.3d at 721. "Intentional delays in medical care may constitute deliberate indifference, even if the inmate's medical condition is non-life threatening." *Id.* at 722 (quoting *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011)). "A doctor's choice of 'easier and less efficacious treatment' for an objectively serious medical condition also may be sufficient . . . [,] [b]ut 'mere disagreement with a doctor's medical judgment' is not enough to support an Eighth Amendment violation." *Id.* (first quoting *Estelle*, 429 U.S. at 104 & n.10; then quoting *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010)).

Additionally, it is well-settled that mere negligence is not enough to establish a Defendant's deliberate indifference. *See, e.g.*, *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). In fact, even gross negligence is insufficient. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). Instead, deliberate indifference is comparable to criminal recklessness. *Thomas v. Blackard,* 2 F.4th 716 (7th Cir. 2021) (citing *King*, 680 F.3d at 1018). "'Reckless' describes conduct so dangerous that the deliberate nature of the

defendant's actions can be inferred." *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002) (quoting *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999)).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources*, Inc., 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (quoting *Zaya v. Sood,* 836 F.3d 800, 805–06 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant knew better than to make the medical decision that [he] did." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016)) (cleaned up). A medical professional's choice of an "easier and less efficacious treatment" can rise to the level of violating the Eighth Amendment, however, where the treatment is known to be ineffective but is chosen anyway. *Berry,* 604 F.3d at 441 (quoting *Estelle*, 429 U.S. at 104 & n.10). The Seventh Circuit has "characterized the standard as imposing a high hurdle on plaintiffs because it requires a 'showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012) (quoting *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006)).

The Defendants first argue that Robinson lacks personal knowledge of their involvement with his care, asserting that "Plaintiff's belief that either Defendant was

the person responsible for scheduling his appointments or for ensuring that he receive medical care is not sufficient evidence to create a triable issue." (Doc. 68, p. 7). They next argue that "[t]here is no evidence in this case that either Defendants Wills or Crain were personally involved in providing medical care or treatment to Plaintiff" and that "Plaintiff's own deposition testimony admits that neither Defendant had the requisite personal involvement to have been deliberately indifferent to Plaintiff's medical needs." (*Id.*, p. 7). They argue that Plaintiff admitted that Wills and Crain would only be aware of his medical needs via the written correspondence he forwarded to them, but that Plaintiff also admitted that neither responded to him. (*Id.*, p. 7 (citing *id.*, ¶¶ 24–25, 29, 32)). They argue that Robinson has not met his burden to prove that Wills and Crain were "sufficiently informed of the situation to require their intervention." (*Id.*, p. 8). They also insist that "Defendants cannot be liable for doing anything more when they lacked sufficient evidence that Plaintiff's medical issue required intervention." (*Id.* (citing *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009))). Wills and Crain also insist that Robinson has failed to show that a delay in medical care constituted deliberate indifference when his "testimony confirms that was treated repeatedly in the time period following the January 17, 2024, incident, starting the day after the incident on January 18, 2024, when he was seen for four to five hours." (*Id.* (citing *id.*, ¶¶ 4–19)).

The first question before the Court is whether Robinson's injuries qualified as a "serious" medical condition. "[T]he Supreme Court contemplated that medical conditions far less critical than 'life-threatening' would be encompassed by the term." *Gutierrez* at 1370. "Indeed, the inmate in *Estelle* based his medical care claim 'solely

on the lack of diagnosis and inadequate treatment of his back injury,' which had been diagnosed by prison doctors as a lower back strain and treated with muscle relaxants and pain medication." *Id.* at 1370–71 (quoting *Estelle* at 107). The Seventh Circuit concluded in *Gutierrez* that an infected pilonidal cyst was a sufficiently "serious" medical need, like the back injury in *Estelle*; injuries from an assault by prison guards in *Cooper v. Casey*, 97 F.3d 914, 917–18 (7th Cir. 1996); and psychological treatment in *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996). *See Gutierrez* at 1371–72. However, the Seventh Circuit put common colds, toes with removed toenails, and mild asthma as being outside the ambit of "serious" medical needs. *See id.* at 1372 (citing *Gibson v. McEvers*, 631 F.2d 95 (7th Cir. 1980); *Snipes v. DeTella*, 95 F.3d 586, 591 n.1 (7th Cir. 1996), *cert. denied*, 519 U.S. 1126 (1997); *Oliver v. Deen*, 77 F.3d 156 (7th Cir. 1996)).

With all of the above in mind, the Seventh Circuit noted that "[i]t is a far easier task to identify a few exemplars of conditions so plainly trivial and insignificant as to be outside the domain of Eighth Amendment concern than it is to articulate a workable standard for determining 'seriousness' at the pleading stage." *Id.* at 1372. Notably, *Gutierrez* involved a suit dismissed at the pleadings, not a case at the point of summary judgment as in the instant case.

Robinson testified that he was seen by various nurses at Menard, that he was prescribed medication including Cymbalta to reduce nerve pain and swelling, and that he was provided with a carpal tunnel brace. (*See* Doc. 68, ¶¶ 6–10 (citing *id.*, Ex. B, 72:8–10; 65:14–66:20; 92:1–18; 92:21–93:14; 97:17–98:23)). Therefore, based on the factual record indicating that Robinson's course of treatment included various

medications, sick visits, and a special hand brace, this Court holds that Robinson's hand injury was a sufficiently serious medical need in line with the first prong of the deliberate indifference standard. *See Cesal,* 851 F.3d at 721.

We then move to the question of whether each of the named Defendants were deliberately indifferent to Robinson's injury. In *Cesal*, the Seventh Circuit found that a prison physician was not deliberately indifferent to an inmate's back injury because there was not "any reason in this record to think that starting with the physician assistant and nurse was not a reasonable step." *Id.* at 723. While Robinson has alleged that he was never scheduled for physical therapy by a physician or doctor (Doc. 68, ¶ 12 (citing *id.*, Ex. B, 101:3–16; 117:16–118:8)), the Seventh Circuit has stated that "[o]ne thing which has long been clear in our Eighth Amendment cases is that the amendment is not coterminous with a medical malpractice claim." *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997) (citing *Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996); *Oliver v. Deen*, 77 F.3d 156 (7th Cir. 1996); *Snipes v. DeTella*, 95 F.3d 586 (7th Cir. 1996), *cert. denied*, 519 U.S. 1126 (1997)). Additionally, prisoners are "not entitled to the best care possible" but rather "to reasonable measures to meet a substantial risk of serious harm to her." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). When a prisoner sought "specific treatment and foolproof protection from infection," the Seventh Circuit stated that "[t]he Eight Amendment does not provide her with either." *Forbes*, 112 F.3d at 266.

Robinson does not dispute the fact that none of the named Defendants are medical professionals. (*See* Doc. 68, ¶¶ 21–22 (citing *id.*, Ex. B, 87:18–20; *id.*, Ex. C, ¶ 2); *id.*, ¶¶ 26–27 (citing *id.*, Ex. B, 87:15–17; *id.*, Ex. D, ¶ 1)). The Seventh Circuit

has stated that they "have long recognized that the division of labor within a prison necessitates that non-medical officials may reasonably defer to the judgment of medical professionals regarding inmate treatment." *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 50 (Mem.). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Id.* (quoting *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005)). Additionally, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 1049–50 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). The Seventh Circuit has repeatedly affirmed district courts' grant of summary judgment "for non-medical prison officials who relied on the professional judgment of prison medical staff." *Id.* at 1050 (citing *Hayes v. Snyder*, 546 F.3d 516, 527–28 (7th Cir. 2008)). In both *Giles* and in *Haynes*, the Seventh Circuit determined that such officials "'were entitled to rely on the professional judgment of medical prison officials'" and "'nothing in [the medical] reports made it obvious that [the inmate] might not be receiving adequate care.'" *Id.* (citing *Hayes* at 527–28). Notably, Giles "was receiving regular medical attention from psychologists, psychiatrists, and mental health professionals," had emergency appeals that "were reviewed by the ARB, which found his complaints to be without merit upon investigation," and did not "present[] evidence that his grievances were ignored or mishandled." *Id.*

The instant case is analogous to both *Giles* and to *Haynes.* Plaintiff  Robinson states that numbness starting between his knuckles and continuing to the tips of his fingers began with the alleged assault on January 17, 2024. (Doc. 68, Ex. B, 106:3–108:20)). In his Deposition, he states that he sustained nerve damage from the assault, that he was prescribed a nerve brace and Botox, and that "[t]he nerve finally released in [his] wrist," but that he still has swelling and nerve damage and that he is going to be seen by another neurologist. (*Id.*, Ex. B, 58:19–60:1).

Robinson was first treated at the seizure clinic in Carbondale, Illinois before arriving at Menard. (*Id.*, ¶ 4 (citing *id.*, Ex. B, 64:3–10)). Robinson testified that he saw nurses approximately twice per day when they would provide him with medication. (*Id.*, ¶ 6 (citing *id.*, Ex. B, 72:8–10)). Robinson alleges that he was seen at thirteen sick calls and went thirty-four days before being seen by a medical provider. (*Id.*, Ex. B, 66:5–67:9). He states that he was first seen by a nurse on February 22, 2024 and that she recommended that he be seen by a nurse practitioner. (*Id.*, ¶ 8 (citing *id.*, Ex. B, 92:1–18)). She also prescribed Tylenol when Robinson said that ibuprofen upset his stomach. (*Id.*, Ex. B, 90:14–22). He testified at his Deposition that his first visit with a nurse practitioner was not until July 11, 2024. (*Id.*, Ex. B, 92:12–24). However, Robinson also testified in his Deposition that he was diagnosed with carpal tunnel syndrome by Dr. Laurie Guyton, an outside neurologist, on March 22, 2024; he also commented that she was "the second neurologist" that treated him. (*Id.*, Ex. B, 113:19–116:6). He states that Nurse Practitioner Dearmond provided him with "a carpal tunnel brace, and a medication prescription for Cymbalta to reduce nerve pain and swelling" on July 11, 2024. (*Id.*, ¶¶ 9–10 (citing *id.*, Ex. B, 92:21–

93:14; 97:17–98:23)). While Dearmond recommended that he be seen by a neurologist, Robinson declined the recommendation. (*Id.*, ¶ 11 (citing *id.*, Ex. B, 100:22–101:3)). Dearmond also recommended that he be scheduled for physical therapy, but Robinson alleges that this never occurred. (*Id.*, ¶ 12 (citing *id.*, Ex. B, 101:3–16)). He testified that the brace helped with the swelling, but not with the pain; he states that he developed carpal tunnel syndrome and that Nurse Practitioner Dearmond told him that his "carpal tunnel syndrome is what it is" and that "even with the surgery it still may not take away the numbness in [his] fingers, being that nerves don't heal the same as bones and skin." (*Id.*, Ex. B, 96:24–100:21). Robinson testified that because he is right-hand dominant, that he was initially in "extreme pain" when writing letters, that the pain "dropped to about an even six or even seven" after a month, and is now "kind of balanced at five." (*Id.*, Ex. B, 104:24–105:12).

Robinson testified that he submitted three grievances seeking medical care for his hand injuries. (*Id.*, ¶ 18 (citing *id.*, Ex. B, at 78:4–8)). Robinson states that he contacted Defendant Crain but did not receive a response (*id.*, ¶ 25 (citing *id.*, Ex. B, 113:9–12)) and that he wrote a letter to Defendant Wills, but did not receive a response with respect to his hand injuries (*id.*, ¶¶ 30–32 (citing *id.*, Ex. B, 85:23–86:21; 113:4–18)).[2]

While Robinson argues that Defendants did not provide him with adequate care, the factual record shows that Robinson was seen at sick call multiple times, was seen by an outside neurologist, and was prescribed various treatments for his hand

---

[2] He states that Wills did address his mental health concerns, which are not a part of this lawsuit. (Doc. 68, ¶¶ 30–32 (citing *id.*, Ex. B, 85:23–86:21; 113:4–18)).

injuries from January 18, 2024 onward. (*See* Doc. 68, Ex. B). Recall also that Robinson refused a referral to a neurologist in July 2024 because he did not want surgery. (*Id.*, ¶ 11 (citing *id.*, Ex. B, 100:22–101:3)). As stated above, a prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). This standard was met here. Regardless of Robinson's assertions of deliberate indifference, it was reasonable for each of the non-physician defendants to rely upon the treatment provided by prison medical officials, who continued to prescribe various treatments for Robinson's hand injury, including pain medication, a neurology referral, a carpal tunnel brace, and Cymbalta for nerve-induced swelling. It is well-established that nerve injuries are complex, taking weeks or months to heal. *See, e.g.*, *Nerve Injuries in the Hand and Fingers*, AM. ACAD. ORTHOPAEDIC SURGEONS, https://orthoinfo.aaos.org/en/diseases--conditions/nerve-injuries (last visited May 4, 2026).

Additionally, this Court noted in its Order on Robinson's Motion for Preliminary Injunction that "[s]ince arriving at Menard and receiving a diagnosis of carpal tunnel, Plaintiff has been in two altercations with other individuals at Menard, on July 17 and again on October 14." (Doc. 45, p. 5 (citing *id.*, Ex. E, p. 1; Doc. 44, p. 1)). This Court noted that "[a]lthough he is dissatisfied with his care at Menard and continues to experience hand pain due to subsequent and unrelated conduct and injuries that have occurred since his transfer and filing of this case, there is no evidence that he is being denied medical treatment." (*Id.*, pp. 5–6). Robinson has offered neither evidence nor argument to rebut Defendants' Motion for Summary

Judgment; but another way, he has not provided any evidence to move the dial on his Eighth Amendment deliberate indifference claim.

Therefore, this Court holds that none of the named Defendants were deliberately indifferent to Robinson's hand injury. Regarding Defendant Crain, as Robinson and the Defendants agree, Crain is not a physician and was not responsible for the diagnosis and treatment of Robinson's hand injury. Additionally, she was entitled to rely on the judgment of the providers treating Robinson. The same is true for Wills—Robinson cannot claim that Wills was deliberately indifferent to his injury and that he took no action in response to it when he relied upon the medical judgment of Robinson's treating providers.

In conclusion, while Robinson has adequately argued that his hand injury was a "serious" medical condition requiring treatment, Seventh Circuit precedent indicates that the Defendants were entitled to rely upon the medical judgment of Robinson's medical treatment team; put another way, they not disregard a substantial risk to Robinson's health. *Cesal,* 851 F.3d at 721. Moreover, there is no evidence that any of the Defendants exhibited deliberate indifference to the point of criminal recklessness sufficient to provide them with the scienter required for a deliberate indifference claim, especially as none of the Defendants are medical professionals and, based on the submitted documentation and on Robinson's Deposition, the prescribed treatment was efficacious, even if Robinson disagrees with the course of treatment.

## II. Qualified Immunity

While the Court need not assess the Defendants' qualified immunity argument by virtue of the fact that Robinson's Eighth Amendment claim does not survive the Defendants' Motion for Summary Judgment (Doc. 68), the Court will briefly discuss the applicability of qualified immunity to the instant facts. In the alternative to their arguments against Robinson's claim, the Defendants argue that they are entitled to qualified immunity because "[g]overnment officials performing discretionary functions are generally shielded from liability or civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights." (Doc. 68, p. 9 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). They argue that "[n]either of the Defendants here provided medical treatment to Plaintiff" and that "[w]hen a prisoner is under the care of medical experts 'a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.'" (*Id.*, p. 10 (quoting *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005))). They assert that "[a] non-medical prison official cannot be held deliberately indifferent for the sole reason that he failed to respond directly to the medical complaints of a prisoner who was being treated by the prison medical staff." (*Id.* (citing *Johnson v. Doughty*, 433 F.3d 1001, 1012 (7th Cir. 2006); *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993))). They compare *Johnson* favorably to the instant facts. (*Id.* (citing 433 F.3d 1001)).

"Qualified immunity is an affirmative defense, but once it is raised the burden shifts to the plaintiff to defeat it." *Holleman v. Zatecky*, 951 F.3d 873, 877 (7th Cir. 2020) (citing *Sparing v. Vill. of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001)). "To overcome qualified immunity, the facts viewed in the light most favorable to [the

plaintiff] must 'show that the defendant[s] violated a constitutional right' and that 'the right was clearly established at [that] time.'" *Id.* (quoting *Estate of Clark v. Walker*, 865 F.3d 544, 550 (7th Cir. 2017)).

In the case of Robinson's Eighth Amendment deliberate indifference claim, the Seventh Circuit has established that "[w]hen considering deliberate-indifference claims challenging the medical judgment of prison healthcare personnel, qualified-immunity analysis requires us to frame the legal question with reasonable specificity." *Campbell v. Kallas*, 936 F.3d 536, 546 (7th Cir. 2019). In *Campbell*, the Seventh Circuit determined that "[t]he proper inquiry is whether then-existing caselaw clearly established a constitutional right to gender-dysphoria treatment beyond hormone therapy" not "that 'denying effective treatment' for Campbell's medical condition violates the Eighth Amendment" because the latter "formulation—which is basically a highly conceptualized version of the deliberate-indifference standard—is far too general." *Id.* at 546. Additionally, "'[f]or purposes of qualified immunity, [the Eighth-Amendment] duty' to treat prisoners' serious medical conditions 'need not be litigated and then established disease by disease or injury by injury.'" *Id.* at 548 (quoting *Est. of Clark*, 865 F.3d at 553). Moreover, "[w]hen prison officials utterly fail to provide care for a serious medical condition, the constitutional violation is obvious and qualified immunity offers little protection." *Id.* (citing *Orlowski v. Milwaukee County*, 872 F.3d 417, 422 (7th Cir. 2017)).

Here, Robinson cannot argue that his hand injury was not treated at all, which is clearly not the case. His argument, then, is that prison officials persisted in treatment that was ineffective. *See id.* at 547 (quoting *Greeno v. Daley*, 414 F.3d 645,

655 (7th Cir. 2005) (citing *Petties v. Carter*, 836 F.3d 722, 729–30 (7th Cir. 2016), *as amended* (Aug. 25, 2016)). This argument also fails because it has clearly been established that the Defendants treated Robinson's injury. Like in *Campbell*, there is no Circuit precedent indicating that the course of care for his hand injury violated a constitutional right, meaning the Defendants were not on notice of a constitutional violation and would be entitled to qualified immunity if the Court reached that question.

## CONCLUSION

For the reasons set forth above, Defendants Angela Crain and Warden Anthony Wills's Motion for Summary Judgment (Doc. 68) is **GRANTED**. This case is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: May 6, 2026**

s/ *Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**